697 So.2d 16 (1997)
In the Matter of the SUCCESSION OF Lubertha D. BRANTLEY.
No. CA 96 1307.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*17 A.P. Manint, Baton Rouge, for plaintiff/appellee Ardelia S. Clark.
Carey J. Messina, Todd A. Rossi, Baton Rouge, for defendants/appellants Ruth D. Lloyd, Burnett Dyer, Lillian M. Birkett, Jacqueline D. Phelps, J.M. Dyer, Jean Dyer Patin, Lillian Patricia Potter, Carole Dyer Lewis-Grey, and Erika P. McDaniel.
Before LOTTINGER, C.J., and WHIPPLE and FITZSIMMONS, JJ.
WHIPPLE, Judge.
This matter is before us on appeal from the trial court's granting of a "Motion for Summary Judgment on Petition for Declaratory Judgment" filed by Ardelia Clark in the probate suit involving the succession of Clark's aunt, Lubertha D. Brantley. On December 10, 1993, Brantley had executed a statutory testament. Brantley died on December 19, 1994. A petition for probate of Brantley's statutory testament was filed by Clark, the alleged universal legatee under the last will and testament of Brantley.
After the filing of an opposition to the ex parte probate of the testament and other pleadings by various parties claiming an interest in the succession, Clark filed a "Petition for Declaratory Judgment" in the pending probate action. Clark sought a judicial determination that the April 1, 1987 interdiction of Brantley had been revoked by a judgment signed October 28, 1988; that the issue of the revocation of Brantley's interdiction was res judicata and not subject to attack by defendants; that all persons have capacity to make and receive donations mortis causa and inter vivos under LSA-C.C. art. 1470; that Brantley was entitled to the presumption of capacity under LSA-C.C. art. 1470; that under LSA-C.C. art. 1482, any person challenging a donor's capacity who is not under a judicial determination of mental infirmity must prove by clear and convincing evidence that the donor lacked capacity at the time he executed the testament; and that defendants, Ruth D. Lloyd, Burnett Dyer, Lillian M. Birkett, Jacqueline D. Phelps, J.M. Dyer, Jean Dyer Patin, Lillian Patricia Potter and Carole Dyer Lewis-Grey [the Lloyd heirs][1] bore the burden of proving by clear and convincing evidence that Brantley lacked capacity at the time the disputed testament was executed.[2]
*18 After filing the petition for declaratory judgment, Clark moved for summary judgment on her declaratory judgment action, and the Lloyd heirs likewise filed a motion for summary judgment on their reconventional demand.[3]
By judgment signed February 23, 1996, the trial court granted Clark's motion for summary judgment on the petition for declaratory judgment, and denied the Lloyd heirs' motion for summary judgment. The judgment held:
(1) The April 1, 1987 interdiction of Lubertha Brantley was revoked by the October 28, 1988 judgment;
(2) Brantley was entitled to the presumption of testamentary capacity pursuant to LSA-C.C. art. 1470;
(3) Pursuant to LSA-C.C. art. 1482, any party challenging the capacity of a donor, who is not under a judicial determination of mental infirmity, must prove by clear and convincing evidence that the donor lacked capacity at the time the testament was executed; and
(4) Defendants bear the burden of proving by clear and convincing evidence that Brantley lacked capacity at the time she executed the testament.
The Lloyd heirs appeal this judgment. Before we address the merits of the appeal, we must first consider the procedural posture in which this matter appears before us.

APPEAL OF DECLARATORY JUDGMENT ON A PROCEDURAL ISSUE
LSA-C.C.P. art. 1871 provides that courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. The declaration shall have the force and effect of a final judgment or decree. A declaratory judgment may be reviewed as other orders, judgments, and decrees. LSA-C.C.P. art. 1877. It is appealable as a final judgment. Moody v. United National Insurance Co., 95-1, p. 8 (La.App. 5th Cir. 5/10/95); 657 So.2d 236, 241, writ denied, 95-2063, 2085 (La.11/17/95); 663 So.2d 713. An appeal may be taken from a final judgment or from an interlocutory judgment which may cause irreparable injury. LSA-C.C.P. art. 2083. A judgment that determines the merits in whole or in part is a final judgment, but a judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. LSA-C.C.P. art. 1841.
The difficulty with the declaratory judgment from which the Lloyd heirs appeal is that the judgment at issue on appeal did not actually determine the merits of the case. Instead, the judgment appealed from seemingly determines a procedural issue, i.e., which party bears the burden of proof under LSA-C.C. art. 1482.[4] The trial court's finding that the April 1, 1987 interdiction of Brantley was revoked by the October 28, 1988 judgment, and that Brantley is entitled to the presumption of testamentary capacity, implicitly decides that Brantley did not execute the testament at a time when she was judicially declared to be mentally infirm. However, the judgment does not decide the actual issue in question: whether Brantley had capacity at the time the testament was executed. This ultimate factual determination can only be made after a trial on the merits. Thus, we find the judgment before us essentially functions as an interlocutory *19 judgment, addressing a procedural issue, and thus, is not subject to appeal unless it would cause irreparable injury.
Discovery issues are generally considered interlocutory matters and, therefore, not subject to appeal. Accordingly, in Falgoust v. Luck, 477 So.2d 822 (La.App. 5th Cir.1985) the court held that a judgment which ordered plaintiff to submit to a physical examination under penalty of dismissal was a "conditional judgment" on a purely preliminary matter which neither disposed of the merits nor caused irreparable harm and accordingly, was not subject to appeal. Falgoust, 477 So.2d at 823-824. However, in Fisher-Rabin Medical Center v. Burdick Corporation, 525 So.2d 1178 (La.App. 5th Cir.), writ denied, 531 So.2d 475 (La.1988), the court held that a judgment rendered pursuant to a motion for declaratory judgment that gave the defendant the right to depose plaintiff's expert had the force and effect of a final decree, and was therefore appealable, even though it addressed discovery issues. Fisher-Rabin, 525 So.2d at 1180.
We do not agree with the holding in Fisher-Rabin that procedural issues, such as discovery and evidentiary matters, are properly the subject of declaratory judgments. In the case before us, an appeal of what is essentially an interlocutory judgment on a procedural issue relative to the nature of the burden of proof and the party who bears it, promotes protracted and piecemeal litigation. After the case is tried, the final judgment determining the merits may and presumably shall be appealed. However, because the record is already before us, we reason that judicial efficiency and the interests of justice may best be served by asserting our plenary power to exercise supervisory jurisdiction at this time. Bourgeois v. Bourgeois, 555 So.2d 653 (La.App. 4th Cir.1989); see Stevens v. Patterson Menhaden Corp., 191 So.2d 692, 697 (La.App. 1st Cir.1966), writ denied, 250 La. 5, 193 So.2d 524 (1967). We convert appellants' appeal to an application for supervisory relief and grant writs in this matter. We now consider the merits of the case.

WAS BRANTLEY UNDER A JUDICIAL DETERMINATION OF MENTAL INFIRMITY WHEN SHE EXECUTED THE WILL?
The issue to be resolved by us is whether the judgment dated October 28, 1988, which purported on its face to revoke Brantley's interdiction, also had the effect of actually declaring judicially that Brantley was mentally infirm, under the terms of LSA-C.C. art. 1482.[5] If so, then the burden of proof falls upon the proponent of the will, Clark, to prove and establish by clear and convincing evidence Brantley's capacity at the time she executed the testament favoring Clark exclusively. If not, then the burden of proof rests with the opponent of the will, the Lloyd heirs, to prove by clear and convincing evidence that Brantley lacked capacity. The Lloyd heirs argue that the language of LSA-C.C. art. 1482 does not confine itself to a judgment of interdiction. Therefore, they argue, the trust agreement which defacto limited Brantley's ability to dispose of her assets without judicial approval was in effect an irrevocable trust and constituted a "judicial declaration" under LSA-C.C. art. 1482 that Brantley was "mentally infirm."
Appellants further argue that if the October 28, 1988 judgment (including the trust agreement) is not a "judicial declaration" that Brantley was "mentally infirm," then it established a limited interdiction pursuant to LSA-C.C. art. 389.1 by mandating that Brantley's assets be placed in trust and managed *20 by a trustee unless and until the court ordered otherwise.
In oral reasons for judgment, the trial court herein stated that, "As a pure matter of law, where a person who is not interdicted makes a testament, this court is of the opinion that where the testament is thereafter challenged, the burden of proof will be on the challenging party." The trial court, then, implicitly equated the terms "mentally infirm" and "judicially declared" as mentioned in LSA-C.C. art. 1482 with "interdiction" as contemplated by LSA-C.C. art. 389.
Comment (b) to LSA-C.C. art. 1482, which was enacted in 1991, states,
The term "mentally infirm" is intentionally employed in this Article in order to include only judicial determinations, such as interdiction, that are based on mental impairment (e.g., interdiction for "imbecility, insanity or madness" under Civil Code Article 389; continuing tutorship on grounds of mental retardation under Civil Code Article 355; civil commitment under R.S. 28:50 et seq.), and to exclude determinations based on physical handicap.... The phrase "judicially declared" is used in the same Article to require a judicial determination of mental infirmity in order for the presumption of capacity to be removed.
Our research has revealed no cases interpreting the phrases "judicially declared" and "mentally infirm" as set forth in LSA-C.C. art. 1482. The issue of whether the language is broad enough to include proceedings other than interdiction appears to be res nova. Bearing these precepts in mind, we examine the facts and procedural history of the case before us.
Looking at the language of the October 28, 1988 judgment itself, we note that it declares "the former interdict is declared to be fully competent now to take care of her person and to administer her estate, subject to the provision that the trust agreement, the proposed draft of which is annexed hereto as a part hereof, is executed by Mrs. Lubertha Dyer Brantley immediately after this judgment is signed...." By its clear terms, the judgment revoked the interdiction and substituted a "revocable trust agreement." The "revocable trust agreement" executed by Brantley and attached to the judgment states, "This trust is a revocable trust, provided, however, it may only be modified, altered, amended, or revoked in whole, or in any part, with the prior consent of a judgment of said Nineteenth Judicial District Court, Division "A", after an order to show cause, with not less than ten days prior written notice [of the proposed modification having been delivered to certain named persons]...." The trust provides that the settlor's income "shall be used to provide [her] with comfortable maintenance, care and support, and health and general welfare, in accordance with her standard of living in the past few years.... However, payments made directly to the Settlor shall not exceed $400.00 per month."
Regardless of the trial court's underlying and unexpressed intent in imposing the "revocable trust agreement" on Brantley and "subjecting" the judgment revoking Brantley's interdiction to her agreement to be bound by the terms of the revocable trust agreement, we cannot agree with appellants that the legal effect of the October 28, 1988 judgment was a "judicial declaration" that Brantley was "mentally infirm." We must evaluate the judgment on its face; we have no means of ascertaining, beyond the language of the judgment itself, what the trial court's motivation was in rendering the judgment revoking the interdiction of Brantley and directing cancellation of the inscription of the judgment of interdiction. In construing a trial court judgment, the entire context of the proceedings must be considered and, in the event of any ambiguity, it is proper to consider the pleadings, subject matter of the suit, reasons for judgment and other matters of record in arriving at an interpretation consistent with the law and facts presented. Geo-Je's Civic Association, Inc. v. Reed, 525 So.2d 192, 195-196 (La.App. 1st Cir.1988). In this case, the judgment itself is not ambiguous. It expressly revokes Brantley's interdiction. Silence in a judgment as to any part of the demand or any issue litigated is construed as a rejection of that claim or issue by the trial court. Fountain v. Fountain, 93-2176, p. 16 (La.App. 1st *21 Cir. 10/7/94); 644 So.2d 733, 743. If the trial court had wished to render a judgment which removed the presumption of capacity afforded under LSA-C.C. art. 1470, it could have worded the judgment accordingly.
To give this judgment expressly revoking interdiction the effect of imposing a new, unnamed version of interdiction on Brantley would be going too far. Even if the October 28, 1988 judgment effectively took away with one hand what it gave with the other, by its clear terms it restored to Brantley the presumption of capacity afforded a donor under LSA-C.C. art. 1470 by affirmatively declaring that she was "fully competent now to take care of her person and to administer her estate." By so doing, it follows that the burden of proof under LSA-C.C. art. 1482 must fall upon the appellants, who challenge Brantley's capacity, to prove by clear and convincing evidence that she lacked capacity at the time she executed the will.
Even if we were to interpret the October 28, 1988 judgment as constituting some sort of determination that Brantley was "mentally infirm," it would not necessarily resolve the question of Brantley's capacity in favor of appellants at a trial on the merits on the issue of incapacity under LSA-C.C. art. 1482. Interdiction, standing alone, does not incapacitate a person from making a will, but is only evidence of incapacity to be considered with all other evidence. Succession of Lanata, 205 La. 915, 18 So.2d 500, 506 (1944); Succession of Sauls, 510 So.2d 715, 717 (La.App. 1st Cir.), writ denied, 513 So.2d 1214 (La.1987).
We likewise do not agree with appellants that the effect of the October 28, 1988 judgment was to create a "limited interdiction" under LSA-C.C. art. 389.1. Once again, we must look at the express language of the judgment. Louisiana Civil Code article 389.1 requires the appointment of a limited curator. However, the judgment did not appoint a limited curator, but instead substituted the "revocable trust agreement" and a trustee, instead of appointing either a curator or a limited curator.
We deem it appropriate to note herein that the effect of our upholding the trial court's judgment herein does not preclude the Lloyd heirs from prevailing at trial; it merely shifts the burden of proof to them to establish Brantley's lack of capacity. For these reasons, the February 23, 1996 judgment of the trial court is affirmed. All costs are assessed to appellants.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur in the result.
This decision rests upon a judgment, which is conditional on its face. It is obvious that the trial court was diligently seeking to find a way to economically and efficiently conserve the estate and protect the heirs and the interdict. However, the judgment conditioned the revocation of interdiction on the performance of an affirmative act by the interdict: execution of the trust. An action that was to be performed after the judgment of competency had been rendered. This is truly the concretization of the maxim, the cart before the horse.
Additionally, I believe that the declaratory judgment of February, 1996 is an appealable judgment. Louisiana Code of Civil Procedure article 1871 provides specifically that: "The declaration shall have the force and effect of a final judgment or decree." See Moody v. United National Insurance Company, 95-1, p. 8 (La.App. 5th Cir. 5/10/95); 657 So.2d 236, 241, writ denied, 95-2063, 2085 (La.11/17/950); 663 So.2d 713; Fisher-Rabin Medical Center v. Burdick Corporation, 525 So.2d 1178, 1180 (La.App. 5th Cir. 1988). The declaratory judgment ended the controversy raised in the petition for declaratory judgment over the legal rights of the parties pursuant to the October 28 judgment. The other findings of the trial court, the procedural points on the burden of proof, flowed from that determination.
NOTES
[1] Lillian M. Birkett, Jacqueline D. Phelps, J.M. Dyer, Jean Dyer Patin, Lillian Patricia Potter, Carole Dyer Lewis-Grey, and Burnett Dyer joined in the initial opposition to the probate of the testament filed by Ruth D. Lloyd. Erika P. McDaniel subsequently joined in the opposition as well.
[2] In proceedings bearing docket number 48163 of the docket of the 19th Judicial District, Parish of East Baton Rouge, Brantley was interdicted by judgment dated April 1, 1987, and Ardelia Clark was appointed curatrix. On February 2, 1988, the Lloyd heirs filed a petition for removal of curator and cancellation of bond. On May 4, 1988, a petition was filed on behalf of Brantley to revoke her interdiction. Dr. Hypolite Landry was appointed to conduct an independent mental evaluation of Brantley. By letter dated May 11, 1988, Dr. Landry concluded that Brantley was mentally incapacitated and unable to manage her finances. However, on October 28, 1988, the trial court rendered a judgment revoking the interdiction and directing cancellation of the inscription of the judgment of interdiction. The interdiction was revoked, per the terms of the judgment, "subject to the provision that the trust agreement, the proposed draft of which is annexed hereto as a part hereof, is executed by Mrs. Lubertha Dyer Brantley immediately after this judgment is signed, and such signed trust agreement is filed of record in the office of the Clerk of Court of East Baton Rouge Parish, without delay, after its execution...." The "`revocable' trust agreement" was executed immediately after the judgment and was signed by Brantley.
[3] The reconventional demand alleged that the October 28, 1988 judgment recognized Brantley's mental impairment and constituted a judicial determination that she was mentally infirm and, therefore, the burden of proof fell under LSA-C.C. art. 1482 to Clark, as proponent of the will, to prove by clear and convincing evidence that Brantley had the requisite capacity to execute the will. LSA-C.C. art. 1482 reads as follows:

A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos or executed the testament. However, if the donor made the donation or executed the testament at a time when he was judicially declared to be mentally infirm, then the proponent of the challenged donation or testament must prove the capacity of the donor by clear and convincing evidence.
[4] LSA-C.C. art. 1482 has been held to be procedural in nature inasmuch as it concerns an evidentiary matter. Succession of Duboin, 94-446 (La.App. 3rd Cir. 11/2/94); 649 So.2d 617.
[5] Clark argues that the Lloyd heirs cannot now attack the October 28, 1988 judgment, contending it is res judicata in this proceeding. We note that the judgment would be governed by the law predating LSA-R.S. 13:4231 and 4232, which were enacted by Section 5 of Acts 1990, No. 521, § 1. That act provided that the act shall become effective on January 1, 1991 and apply to all civil actions filed on or after January 1, 1991. The law in effect prior to January 1, 1991 determines the authority of a judgment rendered in an action filed before the effective date of the act. Therefore, even though the present action was filed after January 1, 1991, the judgment at issue was dated October 28, 1988 and the pre-1991 law applies. Terrebonne v. Theriot, 94-1632, p. 4 (La.App. 1st Cir. 6/23/95); 657 So.2d 1358, 1361, writ denied, 95-1705 (La.10/6/95); 661 So.2d 476. In any event, the appellants are not attacking the judgment itself, but rather seeking an interpretation of the prior judgment's effect.