| iKLEES, Chief Judge.
In these two consolidated writs, we consider whether medical reports prepared by a plaintiffs physician and directed to plaintiffs counsel are discoverable under La. C.C.P. art. 1424.[1]
The defendant in both cases, Minnesota Mining and Manufacturing Company (3M), issued to medical doctors subpoenas seeking, inter alia, “any and all medical reports” regarding treatment administered to the plaintiffs. Counsel for the plaintiffs filed a motion to quash in each case.[2]
In Hoerner v. ANCO Insulations, Inc., 98-1398 (La.App. 4 Cir. 7/21/98), plaintiffs moved to quash the Subpoena Duces Tecum and Notice of Medical Records Deposition issued to four doctors: Dr. Richard Hebert, Dr. Jere D. Melilli, Dr. Alfred J. Colfrey, Jr., and, Dr. Lawrence Messina. Plaintiffs argued that expert |2reports were protected under La. C.C.P. art. 1424. The trial judge held “the records and reports of plaintiffs treating physicians, including the reports addressed to an attorney,” were discoverable and the judge denied plaintiffs’ motion to quash. This Court granted plaintiffs’ application for writs and reversed, holding that “reports prepared by (plaintiffs) physicians for his counsel in preparation for trial” were not discoverable.
In Olinde v. Allied-Signal, Inc., 98-1598 (La.App. 4 Cir. 7/30/98), the plaintiff moved to quash the Subpoena Duces Tecum and Notice of Medical Records Deposition issued to Dr. Bernard Brach. The trial judge granted plaintiffs motion to quash “as to any *642 expert report directed to counsel.” This Court denied defendant’s application for writs based on Hoemer.
The Supreme Court granted certiorari in both cases and remanded each to this Court for “briefing, argument, and opinion.” We consolidated these writ applications.

Facts

The trial judge in each case held a hearing on the motion to quash. In Hoemer, no evidence or testimony was taken. In Olinde, the transcript is not included in the application. The briefs and arguments of counsel indicate pertinent differences in the factual posture of each case.

Hoemer

At the hearing in Hoemer, counsel did not recite the underlying facts, and no evidence was admitted. Counsel for plaintiffs merely argued that the only items [gshe opposed producing were “consultation letters and reports of a physician directed to an attorney. It’s an expert report.”
The briefs of counsel that were filed in connection with the writ application to this Court did not provide the underlying facts, except that 3M’s brief referred to the plaintiffs physicians as “treating physicians.”
In 3M’s brief to the Supreme Court prior to remand, 3M asserted that “Drs. Messina, Hebert, Melilli and Colfrey are independent physicians, not retained by any party in this lawsuit, and all four treated Mr. Hoerner prior to his filing suit.” 3M submitted that any diagnosis and treatment rendered before suit was filed were not in anticipation of litigation.
As we understood counsel for the plaintiffs in oral argument, the plaintiff in Hoemer consulted an attorney in the 1980s, apparently regarding possible asbestos litigation. That attorney sent the plaintiff to a pulmo-nologist, Dr. Richard Hebert, who monitored the plaintiff for possible development of asbestos related illness. Dr. Hebert sent periodic reports to plaintiffs counsel. Counsel did not explain the role of the other three physicians subpoenaed in Hoemer.

Olinde

In Olinde, the transcript of the hearing is not attached to the writ application. The briefs of counsel in the writ application to this Court did not recite the underlying facts, except that 3M’s counsel referred to the physicians as plaintiffs “treating physicians.”
|4In its brief to the Supreme Court prior to remand, 3M asserted that “Dr. Brach is an independent physician, not retained by any party in this lawsuit, and treated Mr. Olinde prior to his filing this suit.”
As we understood the statement of plaintiffs counsel in oral argument, the plaintiff consulted an internist who sent him to pul-monologist, Dr. Bernard Brach. According to plaintiffs counsel, Dr. Brach performed various medical studies and prepared records and handwritten notes concerning the plaintiffs condition. As we understood oral argument, Dr. Brach sent a medical report to plaintiffs counsel solely at counsel’s request.
In both Hoemer and Olinde, “(p)laintiffs are only seeking to prevent disclosure of expert reports directed to counsel. They are not seeking to prevent disclosure of medical records.” In oral argument, all counsel declined to stipulate to any fact.
Generally, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending action. La. C.C.P. art. 1422. The objectives of discovery are to afford all parties a fair opportunity to obtain facts pertinent to the litigation; to discover the true facts and compel their disclosure; to assist litigants in preparing for trial; to narrow and clarify the issues; and to facilitate and expedíate the legal process by encouraging settlement or abandonment of less than meritorious claims. Hodges v. Southern Farm Bureau Casualty Insurance Co., 433 So.2d 125, 129 (La.1983). Broad |5discovery is encouraged to promote the objectives of the procedure. Id.; Moak v. Illinois Central Railroad Co., 93-0783 (La.1/14/94), 631 So.2d 401, 405.
Minnesota Mining and Manufacturing Company argues that the reports are not privileged because plaintiffs waived the health care provider-patient privilege under La. C.E. art. 510, and therefore, the reports *643 are discoverable; that the expert reports in these cases are not exempt from discovery under La. C.C.P. art. 1424 because they were issued by treating physicians who are not experts under Art. 1424; that 3M would be unfairly prejudiced without the medical reports; and that medical reports of treating physicians are not covered by the attorney-client privilege enunciated in La. C.E. art. 506.
Plaintiffs argue that expert reports directed to an attorney are exempt from discovery under La. C.C.P. art. 1424; and that the reports are privileged from disclosure under the attorney-client privilege.
We first address the issue whether the reports are discoverable based on waiver of the health care provider-patient privilege.
Under La. C.E. art. 510(B)(1), a confidential communication made for the purpose of advice, diagnosis, or treatment of the patient’s health condition is privileged. An exception is provided under La. C.E. art. 510(B)(2)(a) when the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial proceeding. In such a case, there is an implied waiver of the privilege by the patient-plaintiff as to discovery of the |6communication “by one of the discovery methods authorized by the Code of Civil Procedure Article 1421 et seq.” La. C.E. art. 510(E).
La. C.E. art. 510 provides, in pertinent part:
B. (1) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
(2) Exceptions. There is no privilege under this Article in a non-criminal proceeding as to a communication:
(a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker’s compensation proceeding.
[[Image here]]
E. Waiver. The exceptions to the privilege set forth in Paragraph B(2) shall constitute a waiver of the privilege only as to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Article 1421 et seq.
Plaintiffs claim that irrespective of the general provisions of La. C.E. art. 510, medical reports directed to counsel are excluded from discovery under La. C.C.P. art. 1424. Plaintiffs assert that the reports are writings that reflect the mental impressions, conclusions, opinions, and theories of an expert. Plaintiffs also argue that the reports were written in anticipation of litigation (in Hoemer, by a physician who monitored the plaintiff to determine the point at which he could file suit, and in Olinde, by a physician who issued a report at counsel’s request).
|7La. C.C.P. art. 1424 contains Louisiana’s work-product exclusion, providing a qualified privilege for writings “obtained or prepared... in anticipation of litigation or in preparation for trial.” Wolford v. JoEllen Smith Psychiatric Hosp., 96-2460, p. 2 (La.5/20/97), 693 So.2d 1164, 1166. The article prohibits a court from ordering the production or inspection of any part of the writing “that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.” La. C.C.P. art. 1424 reads, in pertinent part:
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeldng the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.
*644 The first sentence of La. C.C.P. art. 1424 provides the qualified privilege for writings obtained or prepared in anticipation of litigation, unless the denial of production would unfairly prejudice or cause undue hardship to the party seeking production. Wolford, p. 2, 693 So.2d at 1166. The second sentence of La. C.C.P. art. 1424 also contemplates writings that were prepared in anticipation of litigation. Board of Commissioners of New Orleans Exhibition Hall Authority v. Missouri Pacific Railroad Co., 613 So.2d 174, 175 (La.App. 4th Cir.1992). Thus, in an expropriation case involving the production of two appraisers’ opinions that were formulated in anticipation of litigation, the Supreme Court held that “(a)n expert’s | ^written opinion is clearly not subject to production or inspection under any circumstance.” State, Department of Transportation & Development v. Stumpf, 458 So.2d 448, 452 (La.1984). In another expropriation case involving appraisals that unquestionably were not prepared in anticipation of litigation, the trial judge properly ordered production of those appraisals. Board of Commissioners of New Orleans Exhibition Hall Authority v. Missouri Pacific Railroad Co., 613 So.2d at 175.
As argued by 3M, a treating physician is not retained in anticipation of litigation. That physician’s entire purpose in examining the patient is to render professional health care services for the welfare of the patient. By contrast, a physician who examines a patient in anticipation of litigation generally sees the patient on fewer occasions to determine the condition and status of the patient and to render an opinion regarding his or her findings.
Louisiana jurisprudence recognizes that distinction, for instance, by holding that the testimony of a physician who examines and treats the plaintiff from the inception of injury is usually entitled to more weight than the testimony of a physician who examines the plaintiff solely in anticipation of litigation. E.g., Young v. Logue, 94-0585, p. 38 (La.App. 4 Cir. 5/16/95), 660 So.2d 32, 57, writs den. 95-2575, 95-2585 (La.12/15/95), 664 So.2d 443, and writ den. 95-2597 (La.12/15/95), 664 So.2d 444; Williams v. City of Monroe, 27,065, p. 17 (La.App. 2 Cir. 7/3/95), 658 So.2d 820, 835, writ den. 95-1998 (La.12/15/95), 664 So.2d 451, and writ den. 95-2017 (La.12/15/95), 664 So.2d 452.
|9Because La. C.C.P. art. 1424 addresses writings obtained or prepared in anticipation of litigation, and a treating physician does not examine the patient primarily in anticipation of litigation, we conclude that a treating physician is not an “expert” as contemplated therein. Moreover, when we read La. C.E. art. 510 in pari materia with the work-product exclusion of La. C.C.P. art. 1424, we conclude that the legislature’s purpose in providing for the waiver would not be served by applying La. C.C.P. art. 1424 to protect from disclosure the reports issued by a treating physician. Therefore, we conclude that reports by a treating physician are not protected by the attorney work-product rule.
However, plaintiffs claim that the medical reports are protected by the attorney-client privilege. That argument has no merit.
The attorney-client privilege is enunciated in La. C.E. art. 506 and provides in pertinent part:
A client has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
[[Image here]]
(2) Between the lawyer and a representative of the lawyer.
La. C.E. art. 506(B)(2).
“Representative of the lawyer” is defined in La. C.E. art. 506(A)(4) as “a person engaged by the lawyer to assist the lawyer’s rendition of professional legal [ ^services.” It is clear under comment (e) to article 506 that a “representative” is one who is “considered to be so interrelated with the rendition of legal services by the attorney that communications to them are considered as within the *645 privilege.” La. C.E. art. 506, comment (i) states:
This Article includes within the privilege “communications”, that is, what the client tells the lawyer and what the lawyer tells the client. In addition, the Article also applies to the perceptions and observations made by the lawyer of the mental, emotional, or physical condition of the client which occur during the making of a confidential communication. This Article, however, does not include “any information [that the lawyer] may have gotten by reason of his being such legal advisor” as is provided in former R.S. 15:475. .. .[Emphasis added.]
Although the plaintiffs invoked the attorney-client privilege under La. C.E. art. 506(B)(2) (pertaining to communications between a lawyer and a representative of the lawyer), they did not specifically claim that the subpoenaed physicians were “engaged” or employed by counsel to assist in the rendition legal services. Rather, plaintiffs asserted (in briefs to this Court and to the Supreme Court prior to remand) that the experts were “used by” counsel to assist in the rendition of legal services and that the reports were “requested by an attorney for the purpose of the rendition of professional legal services.”
We conclude that a representative of the lawyer is not merely one from whom the attorney requests information, but rather, involves a more direct and substantial relationship with the rendition of legal services. That relationship was not established in these eases.
Adams v. Deaton, Inc., 97-0059 (La.App. 4 Cir. 4/9/97), 694 So.2d 482, writ granted and judgment vacated, 97-1237 (La.6/30/97), 696 So.2d 997, is not dispositive. In Adams, the trial court held that the results of certain blood tests were privileged. This Court reversed based on la. C.E. art. 506, reasoning that the attorney-client privilege does not broadly cover any and all information that the lawyer may have gotten by reason of his being legal advisor to the client. Id., pp. 12-13, 694 So.2d at 490. The Supreme Court reversed and reinstated the trial court’s judgment, simply finding no abuse of the trial court’s discretion.
Conclusion
Our problem in the instant cases is that all of the facts are only contained in briefs or in oral argument. The record, as far as we can ascertain, is woefully lacking factually. We are not privy by way of notes of evidence or stipulation when the reports were made or for whom they were prepared, whether for the patient or the patient’s attorney. We do not even know whether these physicians are, in fact, treating physicians.
Therefore, it is necessary for this Court to vacate the trial judge’s rrding in each case and remand each for an evidentiary hearing for the trial judge to determine those facts and to render a judgment in accordance with this opinion.
VACATED AND REMANDED.
JONES, J., and GULOTTA, J. Pro Tern., concur in part and dissent in part.

. La. C.C.P. art. 1424 provides in pertinent part:
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, in-demnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.

. The same counsel represents 3M in both cases. Likewise, the same attorneys represent the plaintiffs in both cases.